UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

DIANE B. KINSEY,                    )
                                    )
    *Plaintiff*,                     )
                                    )          Case No. 1:07-cv-111
v.                                  )          Judge Mattice
                                    )
W.S. BADCOCK CORPORATION,           )
                                    )
    *Defendant*.                    )

## MEMORANDUM AND ORDER

Plaintiff Diane B. Kinsey brings this action against Defendant W.S. Badcock Corporation claiming that, during her employment with Defendant, she was sexually harassed due to her gender and that she was retaliated against, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*

Before the Court is Defendant's Motion for Summary Judgment [Court Doc. 14]. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.    STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.[1]

Plaintiff Diane B. Kinsey is a fifty year old female who was employed by the Defendant from May 2006 until November 2006. (Affidavit of Diane Kinsey ("Pl.'s Aff."),

---

[1]    Defendant has filed a Motion to Strike Plaintiff's affidavit submitted in support of her response to Defendant's Motion for Summary Judgment. (Court Doc. 24.) Because the Court finds that, even considering the entirety of Plaintiff's affidavit, Plaintiff has failed to defeat Defendant's Motion for Summary Judgment, the Court need not address the merits of Defendant's Motion to Strike.

Court Doc. 20-2, ¶ 1.)  Defendant is a corporation which owns a number of retail furniture stores throughout the country, including stores in Fort Oglethorpe, Georgia and Chattanooga, Tennessee.  (Declaration of Ray Blevins ("Blevins Dec."), Court Doc. 17-2, ¶ 2-3.)

Plaintiff was hired to work in a sales position by the manager of the Fort Oglethorpe store, Michael Laing.  (Pl.'s Aff. ¶ 5.)  When she was hired, she was promised a transfer to Defendant's Chattanooga store whenever a sales position became available.  (*Id.* at ¶ 3.)  Her first day of work in the Fort Oglethorpe store was May 25, 2006.  (*Id.* at ¶ 5.)

Immediately after she began work, Plaintiff noticed strong sexual content in the behavior of her manager, Laing.  (*Id.* at ¶ 8.)  This sexual behavior was directed mainly at Plaintiff's co-worker, Jennifer McConathay.  (*Id.*)  Plaintiff was offended by Laing's behavior, including the following actions:  complaining about his lack of a sex life with his wife, touching her shoulder, massaging her hand, commenting about his body, calling her husband her boyfriend, wrapping his arms around her to reach the computer, telling sexually oriented jokes, commenting about Plaintiff's appearance, commenting about a co-workers homosexuality, commenting about co-workers' relationships, commenting about female customers and applicants for employment, massaging his groin and buttocks, making generally derogatory comments about women,  and making sexual innuendos.  (*Id.* at ¶¶ 9-29.)

Plaintiff began experiencing sleeplessness, headaches, and the beginning of panic attacks, which she attributes to Laing's harassing behavior.  (*Id.* at ¶ 30.)  On August 4, 2006, Plaintiff confronted Laing about his behavior and eventually reported it to

Defendant's human resources department. (*Id.* at ¶ 30-31.) Laing reported his meeting with Plaintiff to Defendant via email, admitting that he had been a jerk and indicating that he had apologized to Plaintiff for his behavior. (Blevins Dec. ¶ 22.) Ray Blevins, Laing's supervisor, spoke with Plaintiff on August 6 and August 7 about her complaints. (*Id.* at ¶ 23-24.) Blevins asked Plaintiff to submit her complaints about Laing in writing and she faxed him a six page letter detailing his offensive behavior. (*Id.* at ¶ 24; Pl.'s Aff. ¶¶ 31-35.)

Blevins reviewed Plaintiff's statement and consulted with Defendant's Director of Employee Relations, James Vernon. (Blevins Dec. ¶ 37; Declaration of James Vernon ("Vernon Dec."), Court Doc. 17-3, ¶ 6). They decided that Laing should receive a written disciplinary statement for his conduct. (Blevins Dec. ¶ 38.) Laing was given the disciplinary notice on August 16, 2006, which instructed him that further such actions would result in additional discipline and possible termination. (*Id.* ex. 2.) Pursuant to Defendant's policy of not announcing disciplinary action, Plaintiff was not informed of Laing's reprimand. (*Id.* at ¶ 40.) Laing was instructed to give Plaintiff a written memorandum stating that the matter had been resolved. (*Id.*)

After she made the harassment report, Plaintiff claims that Laing became angry with her. (Pl.'s Aff. at ¶ 37.) She claims that he reassigned a portion of her inventory which resulted in her losing sales. (*Id.*) Laing and other employees also began ignoring and avoiding Plaintiff. (*Id.* at ¶ 38.) Plaintiff reported Laing's behavior to Blevins. (Blevins Dec. ¶ 41.) Blevins spoke with Laing and instructed him that Plaintiff was to be treated uin the same manner as all other employees of the store. (*Id.* at ¶ 42.)

Pursuant to his instructions from Blevins, on August 26, 2006 Laing gave Plaintiff

a written statement indicating that her harassment report had been handled to Defendant's satisfaction and instructing Plaintiff not to discuss her complaint with her co-workers. (Pl.'s Aff. at ¶ 40.) Plaintiff "went into a crying fit and hid in the bathroom" and called Blevins who told her to go home from work. (*Id.* at ¶ 41.)

On August 28, 2006, Blevins held a meeting for all of the employees at the Fort Oglethorpe store. (*Id.* at ¶ 42.) Blevins told the employees that they needed to start acting like adults. (*Id.*) He also instructed them to report any problems that they had with the company to him and told all of the employees that they could speak to him privately about any issues. (Blevins Dec. ¶ 44-45.) A few employees complained about the operation of the store, such as scheduling and issues regarding the delivery of furniture. (*Id.* at ¶ 45.) Sexual harassment was not discussed at the meeting and no employee, including Plaintiff, complained about Laing's behavior. (*Id.*) When Plaintiff spoke individually with Blevins following the meeting, she did not mention her report of harassment. Instead, she discussed managerial and operations issues with him. (*Id.*; Deposition of Diane Kinsey ("Pl.'s Dep."), Court Doc. 17-4, p. 283.) Plaintiff left the meeting with the impression that she would receive no further help from Blevins regarding her report of Laing's harassment. (Pl.'s Aff. ¶ 42.)

Following the meeting, Blevins asked all the employees to complete a questionnaire about the store. Both male and female employees complained about Laing's managerial style, claiming that he was rude, treated them like children, and was not helpful. (Blevins Dec. ¶ 49.) It was reported that Laing was very "touchy-feely" and would place his hand on the arm or shoulder of both male and female employees. (*Id.* at ¶ 50.)

Plaintiff went to see her doctor on August 31, 2006. (Pl.'s Aff. ¶ 44.) He put her on a new medication and advised her not to drive until she knew how she would respond to it. (*Id.*) Plaintiff called Defendant and gave notice that she would be unable to work due to the new medication. (*Id.*)

On September 1, 2006, Plaintiff received a phone call from a nurse employed by Defendant in an attempt to determine the extent of her health problems. (*Id.*) Plaintiff was asked to send a note from her physician, which she did on September 6, 2006. (*Id.*) Plaintiff informed Defendant that she would not return to work at the Fort Oglethorpe store because she did not want to work with Laing. (Pl.'s Dep. at 242-43.) Plaintiff also said that she would still be interested in a transfer to the Chattanooga store. (*Id.* at 243-44.) Although, under any of Defendant's policies, Plaintiff was not entitled to leave, it did not terminate her for refusing to return to work at the Fort Oglethorpe store. (Blevins Dec. ¶ 55.)

On October 23, 2006, Plaintiff received a letter from Defendant informing her of an opening at the Chattanooga store and offering her the position. (Pl.'s Aff. ¶ 46.) The letter gave her five days to respond to the transfer offer. (*Id.*) Plaintiff faxed a response to Defendant on November 1, 2006, stating that, due to her reaction to her medication, she was medically unable to work. (*Id.* at ¶ 47.) Defendant sent Plaintiff a second letter confirming that Plaintiff was declining the position at the Chattanooga store and Plaintiff did not respond. (Vernon Dec. ¶ 12.) Defendant therefore concluded that Plaintiff had resigned her position. (*Id.*)

## III.    ANALYSIS

Plaintiff claims that, during her employment, in violation of Title VII, she was sexually harassed because of her gender and then retaliated against once she reported the harassment. (Court Doc. 1.)

An employee may prove claims of discrimination and retaliation under Title VII by either direct evidence or circumstantial evidence. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir.2003). When a plaintiff presents direct evidence of discrimination or retaliation, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

When, on the other hand, a plaintiff's claims of discrimination are based on circumstantial evidence, the Court applies the burden-shifting analysis initially described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McClain v. NorthWest Community Corr. Ctr Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). That analysis may be summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

The Court will evaluate Plaintiff's claims within this evidentiary structure.

## A.    Sexual Harassment

Section 2000e-2(a) prohibits employers themselves from creating a hostile work environment by discrimination based on gender. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986). To establish a *prima facie* case of sexual harassment, a plaintiff must show that: "(1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999)). Defendant does not dispute that, as a female, Plaintiff was a member of a protected class or that she was subjected to unwelcome sexual harassment.

1.    *Whether conduct was based on Plaintiff's sex*

Defendant argues that Plaintiff has failed to establish a *prima facie* sexual harassment claim because she has failed to show that the harassment was based on her sex. While the harassment need not be explicitly sexual, it must evince anti-female animus. *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999). To establish that harassment is based on sex, a plaintiff "'must show that but for the fact of her sex, she would not have been the object of harassment.'" *Id.* (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). "Harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement." *Id.*

The crucial inquiry is not whether conduct was related to "sex" in that it was "sexually charged," but whether it was related to the plaintiff's gender. *See E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 520 (6th Cir. 2001) (Guy, J. concurring in part and dissenting in part) ("[I]f the environment is just sexually hostile without an element of gender discrimination, it is not actionable.") "If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment." *Baugham v. Battered Women, Inc.*, 211 Fed. App'x 432, 438 (6th Cir. 2006). "*Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive under the *Harris* standard, constitute a hostile environment in violation of Title VII." *Id.* (referring to *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) (emphasis in original)).

A number of Plaintiff's allegations are not based on her gender. She claims that Laing consistently spoke of the movie Brokeback Mountain as a reference to another

employee's possible homosexuality. (Pl.'s Aff. ¶ 21.) Plaintiff describes conversations in which Laing complained of his lack of sex life with his wife. (*Id.* at ¶ 9.) Plaintiff also refers to comments made by Laing to male employees about their activities with their girlfriends. (*Id.* at ¶ 16.) Plaintiff claims that the men's toilet at her workplace was broken forcing all of the employees, both male and female, as well as all of the customers to use the ladies' toilet. (*Id.* at ¶ 25.) Plaintiff also states that Laing would regularly make derogatory comments about the Babcock corporation. (*Id.* at ¶ 26, 28.) Plaintiff often heard Laing telling "sexually oriented" jokes and innuendos. (Pl.'s Aff. ¶ 17.) Plaintiff claims that Laing would touch her in ways that made her uncomfortable, such as putting his hands on her shoulders, reaching around her to use the computer, and massaging her hand after a high five. (*Id.* at ¶ 10, 15.) Plaintiff also describes being uncomfortable when Laing would "massage his crotch" in front of her. (*Id.* at ¶ 24.)

While these actions may have created a sexually charged atmosphere, there is no evidence that Plaintiff was subjected to this behavior because of her gender. In fact, other male employees claim, and Plaintiff offers no evidence in dispute, that they were subject to the same actions. (Nelson Dep. at 18; Blevins Dec. ¶ 50.) Plaintiff admits that she saw Laing do a number of these things to male employees. (Pl.'s Dep. at 153-54, 159-60,178, 193.) Plaintiff also states that some of the conversations in which the comments were made involved both male and female employees. (*Id.*) Plaintiff does not allege that Laing was more liklely to engage her in these activities because she was female.

Plaintiff has not, therefore, shown a material factual dispute over whether, but for her gender, she would have been subjected to this behavior. The Court can see how some of these acts had the potential to make the workplace uncomfortable, but because these

actions were not based on Plaintiff's gender, they are not evidence of discrimination. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (workplace harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations.") These actions were therefore not "based on her sex" and can not be considered in her claim for sexual harassment. *See Williams*, 187 F.3d at 565 (plaintiff must show that she was subject to unequal treatment because of her sex).

The Court will also not consider the actions of Laing and other employees that occurred after Plaintiff reported Laing's behavior to Defendant, again because it is not based on her gender. Plaintiff alleges that Laing and other employees ignored and avoided her after they received notice that she had complained of Laing's harassment. (Pl.'s Aff. ¶ 37-38.) Plaintiff claims that Laing was angry with her and "would take items away from me available to sell and would not explain why he had done them." (*Id.* at ¶ 37.) Plaintiff has failed to establish that these actions were "because of sex rather than simple belligerence." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000) (refusing to consider post-complaint behavior because it was not based on sex). "Personal conflict does not equate with discriminatory animus." *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342-43 (6th Cir. 1998). As discussed below, these actions may be relevant to the Court's consideration of Plaintiff's retaliation claim, but they are not relevant to her sexual harassment claim.

Other evidence offered by Plaintiff, however, does appear to be based on her gender. Plaintiff claims that Laing made comments to her about her appearance and the cologne that she was wearing. (Pl.'s Aff. ¶ 18.) Plaintiff also states that Laing consistently referred to her husband as her boyfriend. (*Id.* at ¶ 13.) Plaintiff claims that Laing would

flirt with her female co-worker and refer to female customer's physical attributes in a sexual manner.  (*Id.* at ¶ 20, 22, 23.)  Finally, Plaintiff claims that Laing would constantly make derogatory comments about females in general.  (*Id.* at ¶ 27.)

There is no indication that he did any of these things to the male employees.  This evidence, therefore, evinces anti-female animus.  *Williams*, 187 F.3d at 565.  Although much of this behavior was not directed at Plaintiff personally, the Court must still consider it in evaluating Plaintiff's sexual harassment claim.  *Jackson v. Quanet Corp.*, 191 F.3d 647, 660-61 (6th Cir. 1999) ("an employer may create a hostile work environment for an employee even where it directs its discriminatory acts or practices at the protected group of which the plaintiff is a member, and not just at the plaintiff herself).  Accordingly, Plaintiff has met her *prima facie* burden of showing that at least some of Laing's actions were based on her gender.

### 2.    *Whether conduct was severe and pervasive*

Defendant argues that Laing's conduct was not severe and pervasive enough to constitute a hostile work environment.  (Court Doc. 16 at 3-6.)  A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).  To determine whether conduct is severe or pervasive, the Court must engage in both a subjective and objective analysis.  *Randolph*, 453 F.3d at 733.  "Rather than considering each event complained of in isolation, [the Court] must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive."  *Id.* (citing *Black v. Zaring*

*Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.1997)).

Factors which the Court must consider include: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris*, 510 U.S. at 23. However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

In determining whether there was a hostile work environment, the Court must consider only those allegedly harassing acts which were based on the plaintiff's gender. *Williams*, 187 F.3d at 562 (court must consider the totality of the circumstances brought on by "all incidents of alleged harassment"); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) ("many of the alleged harassing acts cannot be considered in the hostile environment analysis because [plaintiff] has not shown that the alleged harassment was based upon his status as a male.") "In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman*, 220 F.3d at 464 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The Court will therefore consider only Laing's actions that it has determined were based on Plaintiff's gender.

The target of some of the discriminatory behavior alleged in this case was not Plaintiff but her co-worker, Jennifer McConathay. Laing commented to McConathay that his body was similar to Fabio's body and told her that he wanted to have alone time with her. (Pl.'s Aff. ¶ 12, 29.) Plaintiff overheard Laing tell a male co-worker that it was Laing's

job to flirt with McConathay. (*Id.* at ¶ 20.) Although this conduct is still relevant in the Court's overall consideration of the workplace setting, the fact that Plaintiff was not the direct target of these actions diminishes its impact. *See Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997) ("While we emphasize that sex-based comments need not be directed at a plaintiff in order to constitute conduct violating Title VII, we note that in this case most of the comments were not directed at plaintiff; this fact contributes to our conclusion that the conduct here was not severe enough to create an objectively hostile environment.")

The only actions that were based on Plaintiff's gender and were directed at Plaintiff were the following: comments about her husband being her boyfriend, one innuendo about a sex act being performed by Plaintiff, a number of comments about Plaintiff's appearance which were accompanied by a "wink and snicker,"[2] notes about the appearance of prospective female employees and customers shown to Plaintiff, and generally derogatory comments about women directed at Plaintiff. (Pl.'s Aff. ¶ 13, 14, 18, 22, 27.)

The evidence shows that Laing's discriminatory conduct was pervasive in the frequency with which it occurred. Plaintiff claims that Laing "frequently" made comments about her appearance, was "unrelenting" in calling her husband her boyfriend, and that the

---

[2]    The Court notes that Plaintiff's description of Laing's comments regarding her appearance varies significantly between her deposition and her affidavit submitted in response to Defendant's Motion for Summary Judgment. In her deposition, Plaintiff stated that Laing told her "[y]ou look very nice today," "[y]ou always look nice every day and I really like your cologne" while looking her up and down. (Pl.'s Dep. at 187-88.) Plaintiff indicated that she would reply "Thank you." (*Id.*)

    In her affidavit, Plaintiff claims that Laing would "walk up to me, look me over slowly and say 'you look preeeeeeeeeeeety' and then wink and snicker or he would come up to me, put his nose within a few inches of my neck, give a deep, deep sniff and then say with a romantic lilt 'you smell gooooooooooooood.'" (Pl.'s Aff. ¶ 18.) For purposes of its analysis of the instant motion, the Court will consider the more exaggerated allegations in the affidavit, as they are not directly contrary those put forth in Plaintiff's deposition. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).

general derogatory statements about women were "innumerable." (Pl.'s Aff. ¶ 13, 18, 27.) However, the discriminatory conduct at issue was not severe. There is nothing in the record suggesting that Laing's conduct was ever physically threatening or humiliating. It is more in line with the "simple teasing, offhand comments," and "merely offensive utterances" which have been held not to constitute a hostile work environment. *See Faragher*, 524 U.S. at 786 (simple teasing and offhand commends do not alter work conditions of employment); *Harris*, 510 U.S. at 23 (merely offensive utterance not hostile work environment).

In *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), the United States Court of Appeals for the Sixth Circuit held that there was not a hostile work environment. The allegedly harassing behavior in *Morris* was: "(1) several dirty jokes he told in plaintiff's presence; (2) his alleged verbal sexual advance related to plaintiff's evaluation; (3) his one-time reference to plaintiff as 'Hot Lips'; and (4) his isolated comments about plaintiff's state of dress." *Id.* at 790. At least one of the discriminatory acts in *Morris* was significantly more severe than those alleged in the case at bar, in that the plaintiff's supervisor had made a blatant sexual advance towards her. Yet the court still concluded that "[the harasser's] behavior seems to have consisted of the kind of simple teasing, offhand comments, and isolated incidents that *Faragher* made clear did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment." *Id.*

The Sixth Circuit also found that the harassment alleged in *Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997), was not severe and pervasive. The conduct in that case

involved sexual innuendos accompanied by "wriggling" of eyebrows, general derogatory comments about females, and repeated references to the female anatomy in a joking manner. *Id.* at 823-24. The offender in *Black* also made sexually offensive comments about the plaintiff to, and in front of, her co-workers. *Id.* at 824. The Sixth Circuit reversed a jury's verdict in favor of the plaintiff, stating "the conduct does not appear to have been more than 'merely offensive'" and, as such, did not establish a hostile work environment. *Id.* at 827.

Both *Black* and *Morris* involve similar allegations of discriminatory conduct and the Sixth Circuit held that there was not a hostile work environment. Although Laing's conduct could easily be construed as offensive and inappropriate, "Title VII was not designed to purge the workplace of vulgarity." *Black*, 104 F.3d at 826. The Court finds that Plaintiff has failed to establish a genuine issue of material fact in dispute as to whether she was subjected to a hostile work environment.

Plaintiff argues that her work environment was "so oppressive and continuous that Plaintiff suffered severe depression and panic attacks and could not work for a period of seven (7) months." (Court Doc. 20 at 11.) As indicated above, in order for the Court to find that Plaintiff has established a *prima facie* case of gender discrimination, it must determine both that a reasonable person would have found the work environment hostile and abusive and that the plaintiff was subjectively offended by the environment. Here, however, because the Court has determined that Plaintiff has failed to establish a genuine material of fact in dispute with regard to the objective standard, it need not address the subjective component. *Williams*, 187 F.3d at 566. Plaintiff's subjective reaction to her work

environment is not relevant to the Court's analysis of whether a reasonable person would have found the work environment hostile. *Id.*

Plaintiff has failed to establish that Laing's conduct was so severe and pervasive so as to alter the conditions of her employment. Accordingly, she has failed to meet her *prima facie* burden of showing that "the charged sexual harassment created a hostile work environment." *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).[3] Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's sexual harassment claim. Plaintiff's claim for sexual harassment pursuant to Title VII is **DISMISSED WITH PREJUDICE**.

### B.    Retaliation and Constructive Discharge

Plaintiff also claims that she was terminated by Defendant in retaliation for her filing a complaint against Laing. (Complaint ¶ 12.) Plaintiff further claims that she was constructively discharged from her position because Laing's harassment caused her such mental anguish that she was unable to continue her employment. (*Id.*)

Retaliation by an employer where an individual has engaged in activity protected by Title VII is prohibited by 42 U.S.C. § 2000e-3(a). "In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas framework*." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination [or retaliation] was at least

---

[3]    Because the Court has determined that Plaintiff has failed to show that she was subject to a hostile work environment, the Court need not address Defendant's contention that Plaintiff has failed to show that it was liable for the harassing conduct as Laing's employer under the fifth prong of the *prima facie* case analysis.

a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Plaintiff has presented no direct evidence that unlawful discrimination was the motivating factor for any alleged adverse employment action.

The elements of a *prima facie* case of Title VII retaliation are as follows: (1) the plaintiff engaged in a protected activity; (2) the exercise of that protected right was known to the defendant; (3) the defendant thereafter took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) a causal connection existed between the protected activity and the adverse employment action or harassment. *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003).

Plaintiff has established that she engaged in a protected activity when she reported Laing's harassment to the corporate headquarters. *See*, *e.g.*, *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). As the report of the harassment was to Defendant's human resources department, there is no doubt that Defendant was aware of Plaintiff's exercise of her protected right. The issue here is then, whether Plaintiff has established that Defendant took an adverse employment action after her report of Laing's harassment or that Plaintiff was subjected to severe and pervasive retaliatory harassment by a supervisor following her complaint.

1. <u>*Materially adverse employment action*</u>

A plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Jones v. Johanns*, 2007 WL 2694017 (6th Cir. Sept. 14, 2007) (quoting *Burlington Northern and Santa Fe Railroad Co. v. White*, 548 U.S. 53 (2007)). Materially adverse actions are judged by an objective standard and include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, or significantly diminished material responsibilities." *Taylor v. Bd. of Ed. of Memphis City Schools*, 240 Fed. App'x 717, 721 (6th Cir. 2007) (internal citation and quotation omitted).

One method of demonstrating a materially adverse employment action is to show that the plaintiff was constructively discharged. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). "To constitute constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). The employer's intent can be shown by demonstrating that the employee's quitting was a foreseeable consequence of the employer's actions. *Id.* The Court must consider whether the plaintiff has been subjected to:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan*, 259 F.3d at 569.

Plaintiff contends that, after she filed her complaint against Laing, his conduct towards her "became quite angry and he would take items away from me available to sell and would not explain to me why he had done them." (Pl.'s Aff. ¶ 37.) She claims that she lost sales because of his actions. (*Id.*) Plaintiff also alleges that other employees stopped talking to her and would avoid her because "Laing told them that I had complained to corporate regarding their sexual harassment." (*Id.* at ¶ 38.) Plaintiff also claims that she was given a formal write-up by Laing that instructed her not to discuss the contents of her complaint against Laing with other employees. (*Id.* at ¶ 40.)

The fact that Laing and Plaintiff's co-workers began ignoring and avoiding her following her report of harassment is not compelling. *Akers v. Alvey*, 338 F.3d 491, 499 (6th Cir. 2003) (supervisor's conduct after report of harassment included ignoring plaintiff, encouraging co-workers to ignore plaintiff, criticizing plaintiff's work and withholding her mail and was held not to constitute constructive discharge). It does not affect her wage or salary, result in a less distinguished title or loss of benefits, and does not constitute badgering, harassment or humiliation. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Railroad Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

The fact that Defendant asked her not to discuss her complaint is not strong evidence in support of a showing of constructive discharge. *Jones*, 2007 WL at * 6 (holding that a request from the employer not to discuss pending discrimination complaint with other employees is not a materially adverse employment action). The method of

handling Plaintiff's disciplinary write-up may have been humiliating considering that it was given to her by her alleged harasser. (Pl.'s Aff. ¶ 40.) Although the message could perhaps have been more appropriately delivered, it was not so humiliating or degrading that a reasonable person would have felt compelled to resign their position.

Plaintiff alleges that Laing immediately removed her ability to sell certain items and that she lost sales as a result of his conduct. (Pl.'s Aff. ¶ 37.) Plaintiff does not, however, allege that her base salary structure was altered or that she suffered the loss of any benefits or a demotion in job title or responsibilities. Nor does she allege that the loss of sales affected her income. There is no indication that she was made to do demeaning or menial work as a result of Laing's actions. This action cannot, therefore, without more, be an adverse employment action. *See Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996) (stating "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.")

Even if Plaintiff had shown that Laing's actions caused her to lose a portion of her income by losing some of her potential for commission, it would not have likely constituted a materially adverse employment action unless she could have proven that her loss was substantial. *See Peterson v. City of Dallas*, 135 Fed. App'x 635, 638 (5th Cir. 2005) (reassignment to another position that resulted in a thirty-five to forty percent lower commission rate was not adverse employment action). A change in employment that has "a minor and indirect effect on one's compensation is [in]sufficient to transform a lateral transfer into a demotion." *Pegram v. Honeywell*, 361 F.3d 272, 284 n.12 (5th Cir. 2004). *See also Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (where

commission income was only a small fraction of total income, there was no triable issue of an adverse employment action).

The Court finds that a reasonable person in Plaintiff's position, considering the treatment of Plaintiff by both Laing and her co-workers, the write-up directing her not to discuss her harassment report with co-workers, and Laing's reassignment of a portion of her sales inventory, would not have felt compelled to resign her position. It was not foreseeable that a person subjected the work conditions faced by Plaintiff would have quit. The fact that Plaintiff subjectively could not continue her employment under those conditions is irrelevant to the Court's analysis. *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999) (imposing objective standard); *Walsh v. State of Ohio*, 2000 WL 1456966, *6 (S.D. Ohio Sept. 26, 2000) ("the plaintiff's subjective impression of the impact of the job action is insufficient.") Accordingly, Plaintiff has failed to establish that she was constructively discharged from her position at the Fort Oglethorpe store.

### 2. *Severe and pervasive retaliatory conduct*

In order to establish her *prima facie* case, Plaintiff must therefore show that she was subjected to severe and pervasive retaliatory conduct by her supervisor. "[T]he standard for 'severe and pervasive' harassment is 'the same in the retaliation context as in the sexual harassment and racial discrimination contexts.'" *Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003) (quoting *Broska v. Henderson*, 2003 WL 21518733, *4 (6th Cir. June 30, 2003)). "To establish that an employer's conduct constitutes severe and pervasive retaliatory harassment, the plaintiff must show that 'the workplace is permeated with

discrimination, intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment.'" *Ceckitti v. City of Columbus*, 14 Fed. App'x 512, 516 (6th Cir. 2001) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff alleges that "Laing's conduct regarding sexual innuendos continued unabated" following her report of harassment. (Pl.'s Aff. ¶ 37.) She does not claim that it increased in frequency or severity following her report. These sexual innuendos cannot, therefore, be considered retaliatory conduct and will not be considered in whether Plaintiff was subjected to severe and pervasive retaliatory conduct.

Plaintiff also claims that, on one occasion, Ray Blevins, Laing's supervisor, held a meeting during which he reprimanded all of the employees at the store in a manner which made her feel that Defendant was not going to do anything about her harassment complaint. (*Id.* at ¶ 42.) Again, Plaintiff has failed to establish that this constituted retaliatory conduct. It is undisputed that Blevins did not discuss sexual harassment at the meeting. (Pl.'s Aff. ¶ 42.) Plaintiff spoke personally with Blevins and discussed management issues, including a discount program that Defendant was offering, as well as other operational issues. (Pl's. Dep. at 283.) There is no evidence that Blevins's meeting at the store was motivated by, or in response to, Plaintiff's harassment claim. A general reprimand of the store's employees does not, in and of itself, show any retaliatory animus. *See Ceckitti*, 14 Fed. App'x at 517 (where plaintiff was reprimanded the same as all others in her unit there is no evidence of retaliatory animus). Plaintiff's subjective belief that, based on Blevins's comments at the meeting, she would get no more help from Defendant with regard to Laing's purported harassment is irrelevant as to whether there was an

objectively retaliatory animus.

Thus, the only retaliatory conduct before the Court is: Plaintiff's co-workers ignoring and avoiding her, a formal write-up demanding that she not discuss her harassment report with co-workers, and the reassignment of some of her sale's inventory.  (*Id.* at ¶ 37, 38, 40.)

This evidence does not establish that she was subject to severe and pervasive retaliatory conduct.  Ignoring an employee and encouraging co-workers to ignore an employee does not create a hostile work environment.  *Akers*, 338 F.3d at 499 (holding that ignoring plaintiff, encouraging her coworkers to do the same, criticizing her work, and withholding her mail was not severe and pervasive conduct).  *See also Wiley v. Slater*, 20 Fed. App'x 404, 406 (6th Cir. 2001) (holding that an employee could not make out objectively severe or pervasive harassment by simply alleging that supervisor and co-workers were hostile towards her).

The other two incidents that Plaintiff claims were retaliatory – the written reprimand from Laing requesting that she not discuss her report with co-workers and her change in inventory available to sell – are both isolated incidents and therefore not pervasive.  *See Diamond v. U.S. Postal Service*, 29 Fed. App'x 207, 213 (small number of incidents were "neither made sufficiently pervasive through repetition, nor . . . sufficiently severe to alter the conditions of employment.") *See also Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) (a discrete act affecting the plaintiff's work assignment does not create hostile work environment).  They are more akin to "the ordinary tribulations of the workplace" that have been held insufficient to sustain a hostile work environment claim.

*See Faragher*, 524 U.S. at 788.

"Title VII was not meant to be, and Court must ensure that it does not become a 'general civility code.'" *Ceckitti*, 14 Fed. App'x at 518 (quoting *Faragher*, 524 U.S. at 788)). The cases in which the Sixth Circuit has held that plaintiff was subjected to severe and pervasive retaliatory conduct are much more egregious than the actions complained of in this case. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 348 (6th Cir. 2008) (co-worker set fire to plaintiff's car and threatened to kill her); *Morris v. City of Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000) (supervisor stopped by plaintiff's work fifteen times and called over thirty times just for the purpose of harassing her; sat outside the building looking in her window and making faces; followed her home from work and pointed his finger at her in a manner that suggested he was going to shoot her; destroyed the television that plaintiff watched at work; and threw roofing nails on her home driveway on a number of occasions); *Austion v. City of Clarksville*, 244 Fed. App'x 639, 653 (6th Cir. 2007) (plaintiff was targeted in investigation of drive-by shooting, his commendation was substantially delayed, a letter was circulated to all employees calling people who filed EEOC charges "complainer" and "disgruntled employees", his supervisor severely reprimanded him for filing charges and changed his work schedule).

Plaintiff has failed to meet her burden of showing that there is a material issue of fact in dispute as to whether she was subjected to objectively severe and pervasive retaliatory conduct following her report of Laing's harassment. Accordingly, Plaintiff has not thereby established the third prong of her *prima facie* case.

3.    _Actual Termination_

It is undisputed that Plaintiff is no longer employed by Defendant.  (Pl's Aff. ¶ 47.) Plaintiff took a leave of absence from the Fort Oglethorpe store on August 31, 2006 because her doctor had put her on new medication that left her unable to drive.  (_Id._ at ¶ 44.)  Plaintiff also refused to return to work at the Fort Oglethorpe store because she did not want to work with Laing.  (Pl.'s Dep. at 242-43.)  Plaintiff informed Defendant that she would not return to work unless she was offered a transfer to the Chattanooga store.  (_Id._ at 243-44.) Although Plaintiff was not entitled to leave under any of Defendant's policies, it did not terminate her for refusing to return to work at the Fort Oglethorpe store.  (Blevins Dec. ¶ 55.)

On October 23, 2006, Plaintiff received a letter from Defendant informing her of an opening in the Chattanooga store and offering her the position.  (Pl.'s Aff. ¶ 46.)  The letter gave her five days to respond to the transfer offer.  (_Id._)  Plaintiff faxed a response to Defendant on November 1, 2006, stating that, due to her reaction to her medication, she was medically unable to work.  (_Id._ at ¶ 47.)  Defendant took this as a rejection of its transfer offer and concluded that Plaintiff had resigned her position.  (Vernon Dec. ¶ 12.)

Viewing the evidence in the light most favorable to Plaintiff, the Court will construe these events as Defendant having terminated Plaintiff when she refused its transfer to the Chattanooga store.  Termination is indisputably a materially adverse employment action. _Hollins v. Atlantic Co., Inc._, 188 F.3d 652, 662 (6th Cir. 1999).  This act alone establishes the third prong of her _prima facie_ case.  However, to establish the fourth prong of her _prima facie_ case of retaliation, Plaintiff must also show that there was a causal connection

between the protected activity and the adverse employment action.  *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003).

It is undisputed that there was not a vacant position in Chattanooga when Plaintiff made her harassment report. (Blevins Dec. ¶ 54.)  Plaintiff could not, therefore, have been offered a transfer at that time.  As soon as a position there was an open position in Chattanooga, it was offered to Plaintiff.  (*Id.*; Vernon Dec. ¶ 10.)  The reason given by Plaintiff for refusing to accept the transfer is that she was medically unable to work at the time of the offer.  (Pl.'s Aff. ¶ 47.)

The protected activity in this case is Plaintiff's report of Laing's harassment to Defendant.  While she argues that the mental health condition that prevented her from being able to work was related to Laing's conduct, she does not allege that it was a result of her filing the harassment report.  Thus, even if the Court assumes that Plaintiff was terminated because of her inability to work, which was, in turn, due to Laing's harassment, Plaintiff has failed to show a causal connection between her protected activity – the report of Laing's harassment – and her termination.  There is simply no evidence supporting Plaintiff's contention that she was terminated in retaliation for having filed a sexual harassment report.  Instead, it is clear that she was terminated when she failed to accept Defendant's offer to transfer her to the Chattanooga store.

Temporal proximity can be enough to establish a causal connection, but only if the protected activity occurred within a very close time frame to the termination.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  In this case, Plaintiff was not terminated until approximately three months after her harassment report.  (Pl.'s Aff. ¶ 33, 48.)  Similar

temporal proximities have been held insufficient to establish a causal connection. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (two to five months is insufficient); *Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) (four months insufficient).

Accordingly, Plaintiff has failed to make out a *prima facie* case of retaliation under Title VII.  Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's retaliation claim and this claim is **DISMISSED WITH PREJUDICE**.

## IV.     CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  The Clerk shall close the case.

SO ORDERED this 12th day of May, 2008.


_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE